FILED
2020 Mar-11  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **OHIO SECURITY INSURANCE** | ) | |
| **COMPANY and OHIO** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | **2:19-CV-1656-MHH** |
| **v.** | ) | |
| | ) | |
| **SUPERIOR LAND DESIGNS, LLC,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>AMENDED</u> REPORT OF PARTIES' PLANNING MEETING

This Report has been amended to reflect the Parties' positions in response to Judge Haikala's request during the telephonic scheduling conference on February 24, 2020, to consider an earlier dispositive motion deadline concerning the duty to defend.  All amendments to the Report are highlighted.

1.      **Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on January 15, 2020, via telephone and was attended by:**

> Seth V. Jackson and Jocelyn Cubbon DeMars of Zelle LLP and John W. Dodson of Dodson Gregory, LLP on behalf of Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively "Plaintiffs");

> Jonathan Palmer of Knight Palmer, LLC and Adam Plant of Battle & Winn LLP on behalf of Defendant Superior Land Designs, LLC ("Superior");

> Glenda Cochran, Matthew Moneyham, and Amanda Luker of Cochran & Associates on behalf of Defendant Hugh Gerald

Delaughder, Jr. ("Delaughder") and Defendant Patsy Ann Whatley, Individually and as Administratrix of the Estate of Bill Monroe Whatley, deceased ("Whatley");

Edward McF. Johnson of Stewart & Stewart, P.C. on behalf of Defendant Cherry Gentry; on behalf of Defendant Kay White; on behalf of Defendants Brent and Brooke Carter (collectively, the "Gentry Defendants");

Charles A. McCallum, III and Eric D. Hoaglund on behalf of Defendants Timothy Webster, Shelby Investments, LLC, and Cahaba Outfitters, LLC ("Webster Defendants");

D. Michael Andrews of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. on behalf of Defendant Beverly Kay Willingham, Individually and as Administratrix of the Estate of Anthony Lee Willingham, deceased ("Willingham");

No one participated in the January 15, 2020 Rule 26 conference on behalf of Defendants Donna and Doug Wright ("Wright Defendants"), who have not yet answered, **but the Wright Defendants are represented by Lloyd W. Gathings of Gathings Law, who participated in the February 24, 2020 telephonic scheduling conference**; and

Lawrence J. Bracken II, Laura T. Wagner, and Michael S. Levine of Hunton Andrews Kurth LLP, and Alan D. Mathis of Butler Snow LLP on behalf of Defendant Colonial Pipeline Company ("Colonial").

## 2.    Brief Description of the Nature of the Case:

This declaratory judgment action arises out of an insurance coverage dispute. The dispute is whether the professional services exclusion or pollution exclusion bars coverage for a defense and indemnification against third-party claims submitted by Superior under the subject insurance policies.

Plaintiffs, Ohio Security and Ohio Casualty, issued two insurance policies (a commercial general liability policy and a commercial umbrella insurance policy,

respectively) to Superior; these policies were in effect from July 5, 2016 to July 5, 2017 and will be referred to collectively as the "Policies."

Colonial owns and operates a petroleum pipeline system that transports certain petroleum products from the Gulf Coast to various locations in the southern United States and along the East Coast (the "Pipeline"). On October 31, 2016, during the course of excavation work to repair the Pipeline as a result of an earlier gasoline release, an employee of the excavation/repair company allegedly struck the Pipeline, resulting in a release of gasoline, which ignited and caused an explosion and fire. According to the underlying complaints, the incident resulted in bodily injuries, loss of life, and property damage. Colonial hired Superior to provide certain services related to the excavation and repair work. On the date of the incident, Superior allegedly assigned Chris Covey to perform various services in connection with the excavation company's work on the pipeline.

As a result of the incident, certain lawsuits (including those brought by Delaughder, Whatley, the Gentry Defendants, the Webster Defendants, Willingham, and the Wright Defendants) were brought against Superior and others, seeking damages (the "Underlying Lawsuits"). Colonial has also asserted a direct claim against Superior (via a demand letter), seeking more than $34 million in damages (the "Colonial Claim").

Ohio Security and Ohio Casualty seek declarations that they have no duty to indemnify or defend Superior for any and all claims arising from the incident, including but not limited to the claims in the Underlying Lawsuits and the Colonial Claim because the Policies' professional liability exclusions and/or pollution exclusions apply to bar coverage for all claims arising out of the incident. Superior and the other defendants contend that Ohio Security and Ohio Casualty have a duty to indemnify and defend Superior for the claims arising from the incident.

Consistent with Rule 19 of the Federal Rules of Civil Procedure and Eleventh Circuit precedent, the plaintiffs in the Underlying Lawsuits and Colonial were joined as necessary parties to this action.[1]

**3.     List of Elements for Each Claim and Defense, including citations for the principal cases upon which each party relies:**

---

[1] *See Owners Ins. Co. v. Bryant*, No. CIV.A. 305CV48CAR, 2006 WL 50488, at *3 (M.D. Ga. Jan. 9, 2006).

### a.    Plaintiffs

Ohio Security and Ohio Casualty seek a declaratory judgment against the Defendants. A declaratory judgment action is proper pursuant to 28 U.S.C. §§2201 and 2202 when an actual, substantial, and justiciable controversy exists between a plaintiff and defendant. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc.*, 339 F. Supp. 3d 1248, 1256 (N.D. Ala. 2017).

In Counts I and II, Ohio Security and Ohio Casualty seek declarations that they have no duty to indemnify or defend Superior with respect to any and all claims arising from the incident, including but not limited to the claims in the Underlying Lawsuits and the Colonial Claim, because the Policies' professional liability exclusions apply to bar coverage. [2] *See, e.g., Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co.*, 297 Ga. App. 751, 755-56 (2009); *Batson-Cook Co. v. Aetna Ins. Co.*, 200 Ga. App. 571 (1991).

In Counts III and IV, Ohio Security and Ohio Casualty seek declarations that they have no duty to indemnify or defend Superior with respect to any and all claims arising from the incident, including but not limited to the claims in the Underlying Lawsuit and the Colonial Claim, because the Policies' pollution exclusions apply to bar coverage. *See Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 721 (2016); *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 288 (2008); *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 231 Ga. App. 89, 90 (1998); *ACSTAR Ins. Co. v. Clean Harbors, Inc.*, 783 F. Supp. 2d 312, 322 (D. Conn. 2011); *Miami-Dade Cty. v. Aviation Office of Am.*, 901 So. 2d 934, 935 (Fla. 3d DCA 2005); *Cataract Metal Finishing, Inc. v. Hartford Fire Ins. Co.*, No. 02-CV-0261E(SC), 2003 WL 251955, at *2-3 (W.D.N.Y. Jan. 2, 2003); *Cortland Pump & Equip., Inc. v. Fireman's Ins. Co. of Newark, N.J.*, 194 A.D.2d 117, 604 N.Y.S.2d 633 (1993). The pollution exclusions would still apply even though the obligations to clean up the gasoline leaks were Colonial's and not Superior's. *See Cortland Pump*, 194 A.D.2d at 117*; see also Nautilus Ins. Co. v. Hawk Transp. Servs., LLC*, 792 F. Supp. 2d 1123 (D. Haw. 2011); *Utica Mut. Ins. Co. v. Hall Equipment, Inc.*, 73 F. Supp.2d 83 (D. Mass. 1999).

### b.    Defendant Superior

---

[2] Georgia law governs the interpretation of the Policies, because the Policies were delivered to Superior and its retail agent in Georgia. *See Lancer Ins. Co. v. Newman Specialized Carriers, Inc.*, 903 F. Supp. 2d 1272, 1278-79 (N.D. Ala. 2012).

The Plaintiffs are not entitled to the declaration they seek for at least the following reasons:

In determining whether an exclusion applies to bar coverage for a claim, the exclusion "must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage. *Georgia Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (2001).

A.   The Professional Services Exclusion Does Not Apply.

As is clear from its name, the "Engineers, Architects or Surveyors Professional Liability Exclusion" at issue here bars coverage for claims arising out of the rendering or failure to render *engineering, architectural or surveying* services. None of the underlying claims against Superior involve any such services. Instead, the underlying suits attempt to assign liability to Superior based on Chis Covey's allegedly flawed handling of excavation services, including his instructions to a track hoe operator to dig in the wrong place. These services, which allegedly resulted in the personal injury, death and property damage at issue in the underlying suits, clearly are not the kinds of services barred by the exclusion.

Presumably, Plaintiffs are relying on the definition of "professional services" in the exclusion, which also includes "supervisory" and "inspection" activities. In the first place, though, these professional services are excluded only if they were rendered by "you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf." The Policies define the term "you" to refer just to the Named Insured, so this exclusion could not apply to an independent contractor not employed by Superior unless that contractor was an "engineer, architect or surveyor" performing work on behalf of Superior. Mr. Covey, an independent contractor not employed by Superior, was not an engineer, architect or surveyor.

Moreover, the underlying suits do not allege that the claims arose from Mr. Covey's "supervisory" or "inspection" activities; they allege that Mr. Covey was negligent in instructing a track hoe operator on where to dig. Even if the lawsuits alleged only that Superior was engaging in supervisory or inspection activities, this definition still would not allow Plaintiffs to avoid their coverage obligations. That is because under a fair reading of the exclusion, which would be construed against the Plaintiffs, supervisory or inspection services would be excluded from coverage only if those services related to engineering, architecture or surveying. Such an exclusion cannot apply to any and all supervision or inspection services performed

by Superior because, if it did, virtually every activity performed by Superior and its employees would be excluded from coverage under the Policies, rendering coverage illusory.

B.     The Pollution Exclusion Does Not Apply.

The death, bodily injury and property damage at issue in the underlying suits allegedly was caused when part of Colonial's pipeline exploded resulting in a fire. The damage and injury resulting from this fire is not even arguably barred by the pollution exclusion.  In the first place, that exclusion applies just to "discharge, dispersal, seepage, migration, release or escape of 'pollutants,'" not to an explosion and fire.  And, as Plaintiffs apparently concede, it only applies here if the "discharge, dispersal, seepage, migration, release or escape …" occurred at a site where Superior was performing operations "to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of, 'pollutants.'" At most, Superior assigned an independent contractor to identify a dig site and instruct an L.E. Bell track hoe operator on where to dig so that L.E. Bell could repair the Colonial pipeline.  Neither Superior nor its independent contractor was testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing "pollutants."  Even if it could be argued that Superior was part of an operation to repair the Colonial pipeline, such a repair still would not fall within this part of the exclusion.

Superior adopts by reference as though incorporated herein Defendant Colonial's List of Elements of Each Claim and Defense set forth below.

### c.     Defendant Delaughder and Defendant Whatley

Defendant Delaughder and Defendant Whatley contend that, pursuant to the commercial general liability policy and the commercial umbrella insurance policy at issue, Ohio Security and Ohio Casualty owe a duty to indemnify and defend Superior for the personal injury and wrongful death claims asserted in *Delaughder, et al. v. Colonial Pipeline, et al.*

Contrary to Ohio Security and Ohio Casualty's position, the professional liability exclusion does not apply and does not bar coverage for Defendant Delaughder and Defendant Whatley's claims. The exclusion is limited to claims arising out of engineering, architectural, or surveying services. Although Defendant Delaughder and Defendant Whatley dispute Superior's description and categorization of the claims in the underlying litigation, as set forth above,

Defendant Delaughder and Defendant Whatley maintain that their claims do not arise out of or relate to any engineering, architectural, or surveying services. Moreover, Ohio Security and Ohio Casualty's interpretation of the professional liability exclusion amounts to an assertion that the policy itself is illusory.

With respect to the pollution exclusion, Defendant Delaughder and Defendant Whatley dispute Superior's description and categorization of its role in the excavation which led to the October 31, 2016 explosion. Nevertheless, Defendant Delaughder and Defendant Whatley assert that the pollution exclusion does not apply to their personal injury and wrongful deaths claims, which were caused by an explosion and fire, and which arise from conduct related to an excavation of a pipeline. Delaughder and Defendant Whatley's claims do not arise from any testing, monitoring, clean up, removal, containment, treatment, detoxification, or neutralization of pollutants, nor are they aimed at any conduct in responding to or assessing the "effects" of any pollutants.

Defendant Delaughder and Defendant Whatley reserve the right to present or pursue additional or different defenses in the future.

### d.    The Gentry Defendants

The Gentry Defendants contend that, pursuant to the commercial general liability policy and the commercial umbrella insurance policy at issue, Ohio Security and Ohio Casualty owe a duty to indemnify and defend Superior for the personal injury, economic injury and property damage claims asserted in *Gentry, et al. v. Colonial Pipeline, et al.*

Contrary to Ohio Security and Ohio Casualty's position, the professional liability exclusion does not apply and does not bar coverage for the Gentry Defendants' claims. The exclusion is limited to claims arising out of engineering, architectural, or surveying services.  Although the Gentry Defendants dispute Superior's description and categorization of the claims in the underlying litigation, as set forth above, the Gentry Defendants maintain that their claims do not arise out of or relate to any engineering, architectural, or surveying services.  Moreover, Ohio Security and Ohio Casualty's interpretation of the professional liability exclusion amounts to an assertion that the policy itself is illusory.

With respect to the pollution exclusion, the Gentry Defendants dispute Superior's description and categorization of its role in the excavation which led to the October 31, 2016 explosion.  Nevertheless, the Gentry Defendants assert that the

pollution exclusion does not apply to their personal injury, economic injury and property damage claims, which were caused by an explosion and fire, and which arise from conduct related to an excavation of a pipeline.

The Gentry Defendants reserve the right to present or pursue additional or different defenses in the future.

### e.   Webster Defendants

The Webster Defendants assert that Ohio Security and Ohio Casualty owe a duty to indemnify Superior under the commercial general liability policy and the commercial umbrella insurance policy at issue for the claims asserted in *Webster, et al. v. Colonial Pipeline Co., et al.* The professional liability exclusion and/or the pollution exclusion do not apply to the issues at hand and do not bar coverage for the claims asserted against Superior in *Webster, et al. v. Colonial Pipeline Co., et al.* Specifically, the Plaintiffs' interpretation of the exclusions are overly broad, should only be applied to traditional environmental pollution incidents, are not consistent with common sense and the reasonable expectations of the parties to the policies, and are not applicable to an explosion occurrence that directly caused injuries and damages as opposed to contamination from a conventional pollution occurrence. The Webster Defendants further adopt and incorporate the contentions of the insured, Defendant Superior, that coverage exists under the policies in issue.

### f.   Defendant Willingham

Defendant Willingham contends that, pursuant to the commercial general liability policy and the commercial umbrella insurance policy at issue, Ohio Security and Ohio Casualty owe a duty to indemnify and defend Superior for the personal injury and wrongful death claims asserted in *Willingham, et al. v. Colonial Pipeline, et al.*

Contrary to Ohio Security and Ohio Casualty's position, the professional liability exclusion does not apply and does not bar coverage for Defendant Willingham's claims. The exclusion is limited to claims arising out of engineering, architectural, or surveying services. Although Defendant Willingham disputes Superior's description and categorization of the claims in the underlying litigation, as set forth above, Defendant Willingham maintains that her claims do not arise out of or relate to any engineering, architectural, or surveying services. Moreover, Ohio Security and Ohio Casualty's interpretation of the professional liability exclusion amounts to an assertion that the policy itself is illusory.

With respect to the pollution exclusion, Defendant Willingham disputes Superior's description and categorization of its role in the excavation which led to the October 31, 2016 explosion.  Nevertheless, Defendant Willingham asserts that the pollution exclusion does not apply to her wrongful death claims, which were caused by an explosion and fire, and which arise from conduct related to an excavation of a pipeline.  Defendant Willingham's claims do not arise from any testing, monitoring, clean up, removal, containment, treatment, detoxification, or neutralization of pollutants, nor are they aimed at any conduct in responding to or assessing the "effects" of any pollutants.

Defendant Willingham reserves the right to present or pursue additional or different defenses in the future.

### g.    Wright Defendants

The Wright Defendants ~~have not appeared in the lawsuit and~~ did not participate in the Rule 26(f) Conference on January 15, 2020, but did participate in the February 24 telephonic scheduling conference.

### h.    Defendant Colonial

Ohio Security issued a commercial general liability policy, policy no. BKS (17) 56 08 93 39, to Superior for the policy period of July 5, 2016, to July 5, 2017.  The policy provides for a $1 million each occurrence limit, a $2 million products-completed operations aggregate limit, and a $2 million general aggregate limit.  In addition, Ohio Casualty issued an umbrella policy issued to Superior for the same period, which has a $5 million per occurrence limit.  Both policies provide insurance coverage for the bodily injuries and property damage alleged in the underlying cases' complaints.

The professional services exclusion cited by the insurers does not apply in this case.  The insurance policies requires that the rendering or failure to render professional services be by Superior or by "any engineer, architect or surveyor who is either employed by [Superior] or performing work on [Superior's] behalf in such capacity."  Here, the bodily injury and property damage did not arise out of professional services by Superior or by an engineer, architect or surveyor employed by Superior or working on Superior's behalf.  The fire and release of gasoline was caused by another contractor, L.E. Bell, striking the pipe, not by Superior or its independent contractor, Mr. Covey.  Moreover, Mr. Covey is not an engineer,

architect, or a surveyor, and was not an employee of Superior at the time of the incident, nor performing work on Superior's behalf as an engineer, architect, or surveyor. For all of these reasons, the exclusion is inapplicable.

The pollution exclusion cited by the insurers also does not pertain in this matter. As an initial matter, most of the bodily injury claimants in the underlying matters allegedly were injured by fire or concussion, not by the release of "pollutants." Furthermore, under the Ohio Security policy, the pollution exclusion does not apply to "'bodily injury' or 'property damage' for which [Superior] may be held liable, if [Superior is] a contractor and the owner or lessee of such premises, site or location has been added to [Superior's] policy as an additional insured with respect to [Superior's] ongoing operations performed for that additional insured at that premises…". Ohio Security Policy, Form CG 00 01 04 13, p. 3 of 17. Superior was required to add Colonial to Superior's liability policies as an additional insured and it is Colonial's understanding that Colonial was added as an additional insured to both policies. The pollution exclusion therefore does not apply to bar coverage for the bodily injury claims asserted against Superior, because Superior was a contractor working on Colonial's right-of-way at the time of the incident.

Under the Ohio Casualty policy, the pollution exclusion does not apply to:

"bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations if the "pollutants" are not brought on or to the premises, site of location in connection with such operations by such "Insured", contractor or subcontractor.

Ohio Casualty Policy, Amendment of Pollution Exclusion Endorsement, exception (4) to exclusion (L)(1). Here, the alleged pollutants were not brought to the site by Superior or by one of its subcontractors. Accordingly, the pollution exclusion in the Ohio Casualty policy also does not apply.

Colonial agrees with the insurers that Georgia law applies to this dispute, including the interpretation of the relevant insurance policies. Colonial adopts by reference as though incorporated herein Superior's List Elements of Each Claim or Defense.

**4.     List of Related Cases or Proceedings Pending Before Another Judge of this Court or Before Another Court or Administrative Body:**

The Underlying Lawsuits in this case include:

- *Covey v. Colonial Pipeline Company, et al.*, Case No. 2:18-cv-01121-RDP, in the United States District Court for the Northern District of Alabama, Southern Division;
- *Delaughder, et al. v. Colonial Pipeline, et al.*, Case No. 2:19-cv-00923, in the United States District Court for the Northern District of Alabama, Southern Division;
- *Gentry, et al. v. Colonial Pipeline Company, et al.*, Case No. CV-2018-900789, in the Circuit Court of Shelby County, Alabama;
- *Webster, et al. v. Colonial Pipeline Company, et al.*, Case No. 58-CV-2017-901175, in the Circuit Court of Shelby County, Alabama;
- *Willingham v. Colonial Pipeline Company, et al.*, Case No. 2:19-cv-01507, in the United States District Court for the Northern District of Alabama, Southern Division; and
- *Wright, et al. v. Colonial Pipeline Company, et al.*, Case No. 58-CV-2018-901017.00, in the Circuit Court for Shelby County, Alabama.

**5.     An indication of the parties' assessment of the complexity of the case:**

**Plaintiffs' Submission**

The facts and legal issues in this case are straight-forward. It appears that the parties agree to many of the key facts.  The key legal issues are simply whether the professional liability exclusions and/or the pollution exclusions bar Superior's claim for insurance coverage.

Discovery in this case will likely involve written discovery requests, as well as document requests to third-parties, including government agencies such as the National Transportation Safety Board and the Alabama Department of Environmental Management, among others. The parties anticipate some depositions, but not an amount to exceed the standard discovery limits.  The only potential complexity with regards to the case is that there may be logistical issues with discovery given the number of parties involved.

**Plaintiffs' Additional Submission**

Plaintiffs believe this case is appropriate for early resolution on the issue of the duty to defend through dispositive motions concerning the duty to defend to be filed by July 31, 2020.  Plaintiffs, though, do not agree with Superior's position that the duty to indemnify is not ripe until the underlying cases are decided.  As noted in the cases cited by Superior *infra*, "the duty to indemnify may be ripe for adjudication where a court finds no duty to defend, and 'logic and common sense' make clear that the duty to indemnify would be governed by the same facts and contractual provisions." *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F.Supp.3d 1329, 1334 (N.D. Ga. 2018).  Similarly, the *Atlantic Casualty* case cited by Superior also notes "a determination that there is no duty to defend may well determine the duty to indemnify issue." *Atlantic Cas. Ins. Co. v. GMC Concrete Co., Inc.*, 2007 WL 4335499 (S.D. Ala 2007).  Therefore, should Plaintiffs prevail on the duty to defend, it is Plaintiffs' position that the duty to indemnify will also be ripe for determination. *See, e.g., Travelers Indem. Co. of Connecticut v. Peachstate Auto Ins. Agency, Inc.*, 357 F. Supp. 3d 1259, 1264 (N.D. Ga. 2019) ("[T]he absence of a duty to defend is dispositive of the duty to indemnify.  *See, e.g.*, *National Cas. Co. v. Pickens*, 582 Fed. Appx. 839, 841 (11th Cir. 2014) (per curiam) ('If there is no duty to defend, there is no duty to indemnify.'); *Shafe v. American States Ins. Co.*, 288 Ga. App. 315, 317, 653 S.E.2d 870 (2007) ('[A]n insurer's duty to defend is broader than its duty to indemnify.'); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005) (noting that because the duty to defend is broader in scope than the duty to indemnify, 'there is no duty to indemnify if there is no duty to defend.').").

Moreover, Plaintiffs do not believe separate discovery tracks, one for discovery related to the duty to defend and another later one for discovery related to the duty to indemnify, are needed.  It is Plaintiffs' position that the discovery needed will touch on both issues and cannot be clearly bifurcated.  Moreover, bifurcation will likely lead to disagreements over the scope of discovery permitted in the first phase as well as potentially result in duplicative discovery, costing all involved additional time and money.

**Defendants' Submission**

The legal issues in this case are straight-forward. It appears that the parties agree on many of the facts but may disagree on the scope and nature of the services being provided by Superior and its independent contractor on the day of the incident.

The key legal issues are whether the professional liability exclusions and/or the pollution exclusions bar Superior's claim for insurance coverage.

Discovery in this case will likely involve written discovery requests, as well as document requests to third-parties, including government agencies such as the National Transportation Safety Board and the Alabama Department of Environmental Management, among others.   The parties anticipate some depositions, but at present do not anticipate an amount to exceed the standard discovery limits.

There are a number of complexities associated with discovery in this case. First, the parties, of which there are many, may each need to respond to discovery requests; may need to be deposed; may want to propound their own discovery requests; and may each identify different witnesses for deposition.   Second, the location of each of the parties and each of the potential witnesses almost certainly will pose logistical and scheduling issues.   Third, the parties will need to agree on a protective order for the Court's consideration and entry before there can be an exchange of documents.   Fourth, the fact that the defendants include both underlying plaintiffs and underlying defendants may require certain limitations on which documents can be shared among the parties and which documents may need to be subject to certain other protections.   There may be other challenges as well, but these alone require a longer discovery period than might otherwise be necessary in this type of case.

**Superior's Additional Submission**

**Superior does not object to bifurcation of this case so that the Court can first rule on the issue of whether Plaintiffs owe a duty to defend Superior in the underlying actions.  In fact, under Georgia law, the insurers' duty to indemnify is not ripe for adjudication unless and until a judgment is rendered against Superior in one or more of the underlying cases.  *See, e.g., Capitol Specialty Insurance Corporation v. PTAV, Inc.*, 331 F.Supp.3d 1329, 1338 (N.D. Ga. 2018) (quoting *Atl. Cas. Ins. Co. v. GMC Concrete Co.*, 2007 WL 4335499, at \*5 (S.D. Ala. Dec. 7, 2007) ("an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit."); *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F.Supp.2d 1367, 1372-74 (N.D. Ga. 2009).**

**Even though the parties seem to agree that the Court should not yet opine on whether there is a duty on the part of the insurers to indemnify Superior,**

Plaintiffs take the position that they should be permitted to conduct discovery on the issue of indemnification.  It is Superior's position that discovery should be limited to issues necessary to resolve the duty to defend, including the policy language, the allegations in the underlying complaints and whether other information known to the insurers would trigger the duty to defend. *PTAV*, 331 F.Supp.3d at 1334 ("if the insurer is aware of factual contentions that would place the claim within the policy coverage, courts may consider such true facts outside of the four corners of the complaint in determining whether an insurer has a duty to defend.").

It makes no sense, prior to resolving the duty to defend, to delve into the veracity of the underlying allegations or otherwise to conduct discovery regarding the duty to indemnify.  If the Court finds that Plaintiffs do not owe a duty to defend because coverage is not even arguably available under the policies, there almost certainly would be no duty to indemnify either, meaning that no discovery on those issues would be necessary.  Allowing discovery now on the duty to indemnify unnecessarily expands this proceeding and, worse, gives the underlying plaintiffs (each of whom is a Defendant here) an opportunity to conduct discovery on the merits of the underlying cases while those cases are still pending.

If the Court agrees with Superior that discovery should be limited to just issues involved in resolving whether there is a duty to defend, Superior agrees that dispositive motions on the duty to defend can be filed by July 31, 2020. However, if the Court orders that discovery should include issues related to the duty to indemnify, Superior disagrees that such broad discovery can be completed in time for a July 31 dispositive motions deadline.  In that event, Superior would propose the discovery and motions deadlines set forth in Defendants' Submission in response to Item No. 6, below.

Webster Defendants adopt Superior's Additional Submission.

Colonial's Additional Submission

With respect to the Court's request that the parties consider an earlier dispositive motion deadline concerning the duty to defend, Colonial agrees that the duty to defend is ripe to be decided as a matter of law.  However, Colonial also acknowledges that it is well-settled that the duty to defend and the duty to indemnify are discrete obligations. *S. Tr. Ins. Co. v. Mountain Express Oil Co.,* 351 Ga. App. 117, 121, 828 S.E.2d 455, 458 (2019), *reconsideration denied* (June

27, 2019), *cert. denied* (Feb. 10, 2020). **The duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage.** *See id. citing Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc.*, **288 Ga. App. 355, 356, 654 S.E.2d 207 (2007). Any "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured."** *Id.* **quoting** *Penn–America Ins. Co. v. Disabled American Veterans*, **268 Ga. at 565, 490 S.E.2d 374 (1997).** *See also Landmark American Ins. Co. v. Khan*, **307 Ga. App. 609, 612 (1), 705 S.E.2d 707 (2011);** *Fireman's Fund Ins. Co.*, **288 Ga. App. at 356, 654 S.E.2d 207;** *BBL–McCarthy v. Baldwin Paving Co.*, **285 Ga. App. 494, 497-498 (1) (a), 646 S.E.2d 682 (2007).**

**Here, the underlying lawsuits allege facts that create at least a potential for coverage under the Ohio Security and Ohio Casualty policies. That potential for coverage is sufficient to trigger the insurers' duty to defend until such time as the facts plainly show that a potential for coverage no longer exists. For that reason, Colonial believes that no discovery is needed on the question of the Plaintiffs' duty to defend obligation. To the extent the Court allows discovery prior to deciding the question of the Plaintiffs' duty to defend, Colonial submits that such discovery should be limited to factual issues that are not alleged in the pleadings and which are essential to determine whether the Plaintiffs can meet their burden to show there is no potential for coverage.**

**Defendant Delaughder and Defendant Whatley's Additional Submission**

**Defendant Delaughder and Defendant Whatley also submit that the question of whether the Plaintiffs owe a duty to defend is ripe to be decided as a matter of law, and should be addressed prior to moving forward with adjudicating the duty to indemnify issue. Defendant Delaughder and Defendant Whatley also agree that dispositive motions on the duty to defend can be filed by July 31, 2020; however, they submit that discovery prior to that time, if any, should be limited to factual issues related to the question of whether there is a duty to defend.**

**6.     List of Proposed Deadlines for Discovery and Dispositive Motions:**

**Plaintiffs' Submission**

The parties propose the following deadlines for discovery and dispositive motions in this matter:

In accordance with Judge Haikala's comment during the telephonic scheduling conference that a compromise between the Parties' previously submitted deadlines was a possibility, Plaintiffs have revised their submission to lengthen the proposed timeframes as shown below:

The parties have exchanged the information required by Local Rule 26.1(a)(1).

All fact discovery in this matter shall be completed by ~~July 31, 2020~~ September 30, 2020.

All parties shall submit disclosures and reports of expert witnesses required by Rule 26(a)(2) by ~~May 29, 2020~~ July 31, 2020.

Rebuttal expert reports and disclosures, if any, shall be due by ~~June 30, 2020~~ August 31, 2020.

Expert discovery, including depositions, shall be completed by ~~July 31, 2020~~ September 30, 2020.

Dispositive motions on the duty to defend shall be filed on or before July 31, 2020.

Other dispositive motions shall be filed on or before ~~August 31, 2020~~ October 30, 2020.

**Defendants' Submission**

The parties propose the following deadlines for discovery and dispositive motions in this matter:

The parties have exchanged the information required by Local Rule 26.1(a)(1).

All fact discovery in this matter shall be completed by **November 30, 2020**.

All parties shall submit disclosures and reports of expert witnesses required by Rule 26(a)(2) by **September 30, 2020**.

Rebuttal expert reports and disclosures, if any, shall be due by **October 31, 2020**.

Expert discovery, including depositions, shall be completed by **November 30, 2020**.

Any mediation or other ADR process shall be completed by **January 15, 2021.**

Dispositive motions shall be filed on or before **February 28, 2021**.

**7.      Proposed Limits on the Number of Discovery Requests and a Statement of the Reasons why the Parties Believe the Proposed Limits are Proportional to the Needs of the Case:**

The parties do not anticipate a need to exceed the limit of 25 interrogatories per party to each other party. The parties propose a limit of 25 requests for production per party to each other party. The parties also propose limits of 10 depositions per side, not inclusive of expert depositions or trial depositions.

**8.      Analysis of the Case's Suitability for Settlement or ADR:**

The parties agree that this case may be suitable for settlement or ADR following discovery and contemplate that they may jointly ask the Court to refer the case to a magistrate judge for mediation.

**9.      Proposed Language to Include in Scheduling Order re: an Agreement regarding Claims of Privilege or Protection:**

The parties will file a proposed Confidentiality and Protective Order for the Court's consideration.

**10.      Status Update**

All Defendants in this action have been served. ~~The Wright Defendants' counsel indicated he would file a response to the Complaint but has not yet done so.~~ **The Wright Defendants have answered.**

Plaintiffs and all Defendants who have appeared decided to hold this Rule 26(f) conference despite the non-appearance of the Wright Defendants, as it has been

more than 90 days since the Complaint was filed and more than 60 days since the Wright Defendants were served.

## 11.    Notice of Receipt and Review of Initial Order

The undersigned attorneys hereby provide notice of their receipt and review of the Court's Initial Order (Dkt. 11), dated October 28, 2019.

Date: January 21, 2020 **and revised March 11, 2020.**

| **DODSON GREGORY, LLP** | **BATTLE & WINN LLP** |
|---|---|
| /s/Michelle L. Crunk (via email authority Jan. 21, 2020) <br> John W. Dodson <br> (ASB-9724-D65J) <br> Michelle L. Crunk <br> (ASB-2967-I71C) <br> PO Box 530725 <br> Birmingham, AL 35253 <br> (205) 834-9171 <br> Fax: (205) 278-8718 <br> jwd@dodsongregory.com <br> mlc@dodsongregory.com <br><br> *Attorneys for Plaintiffs Ohio Security Insurance Company and The Ohio Casualty Insurance Company* | /s/Adam P. Plant (via phone authority Jan. 21, 2020) <br> Harlan F. Winn, III <br> (ASB-7322-N73H) <br> Adam P. Plant <br> (ASB-6324-A64P) <br> 2901 2nd Avenue South, Suite 220 <br> Birmingham, AL 35233 <br> (205) 397-8165 <br> Fax: (205) 397-8179 <br> aplant@battlewinn.com <br> hwinn@battlewinn.com <br><br> *Attorneys for Defendant Superior Land Designs, LLC* |
| **ZELLE LLP** | **KNIGHT PALMER, LLC** |
| /s/Jocelyn Cubbon DeMars <br> James V. Chin (*admitted pro hac vice*) <br> Ga. Bar No. 124827 <br> Jocelyn Cubbon DeMars (*admitted pro hac vice*) <br> Ga. Bar No. 623458 <br> 1170 Peachtree Street NE, Suite 1200 <br> Atlanta, GA 30309 <br> (470) 867-3040 <br> (612) 336-9100 Fax | /s/Jonathan M. Palmer (via email authority Jan. 21, 2020) <br> Jonathan M. Palmer (admitted *pro hac vice*) <br> Ga. Bar No. 453452 <br> One Midtown Plaza <br> 1360 Peachtree Street NE, Suite 1201 <br> Atlanta, GA 30309 <br> (404) 228-4822 <br> jpalmer@knightpalmerlaw.com |

| | |
|---|---|
| jchin@zelle.com<br>jdemars@zelle.com<br><br>Seth V. Jackson (*admitted pro hac*)<br>BBO #658669<br>161 Worcester Road, Suite 502<br>Framingham, MA 01701<br>(781) 466-0726<br>Fax: (781) 466-0701<br>sjackson@zelle.com<br><br>*Attorneys for Plaintiffs Ohio Security Insurance Company and The Ohio Casualty Insurance Company* | *Attorney for Defendant Superior Land Designs, LLC* |
| **MCCALLUM HOAGLUND COOK & IRBY, LLP**<br><br>/s/Eric D. Hoaglund (via email authority Jan. 21, 2020)<br>Charles A. McCallum, III<br>(ASB-5169-U83C)<br>Eric D. Hoaglund<br>(ASB-3449-A55E)<br>R. Brent Irby<br>(ASB-2773-R79R)<br>905 Montgomery Highway, Suite 201<br>Vestavia Hills, AL 35216<br>(205) 824-7767<br>Fax: (205) 824-7768<br>ehoaglund@mhcilaw.com<br>birby@mhcilaw.com<br>cmccallum@mhcilaw.com<br><br>*Attorneys for Defendants Timothy Webster, Cahaba Outfitters, LLC, and Shelby Investments, LLC* | **BUTLER SNOW, LLP**<br><br>/s/Alan D. Mathis (via email authority Jan. 21, 2020)<br>Alan D. Mathis<br>(ASB-8922-A59M)<br>1819 5th Avenue North, Suite 1000<br>Birmingham, AL 35203<br>(205) 297-2239<br>Fax: (205) 297-2201<br>alan.mathis@butlersnow.com<br><br>*Attorney for Defendant Colonial Pipeline Company* |
| **GLENDA COCHRAN & ASSOCIATES** | **HUNTON ANDREWS KURTH LLP** |

| | |
|---|---|
| /s/Matthew R. Moneyham (via email authority Jan. 21, 2020) | /s/Lawrence J. Bracken II (via email authority Jan. 21, 2020) |
| Glenda G. Cochran | Lawrence J. Bracken II (admitted *pro hac vice*) |
| (ASB- 5150-c66g) | Ga. Bar No. 073750 |
| Matthew R. Moneyham | Laura T. Wagner (admitted *pro hac vice*) |
| (ASB-1954-t77m) | Ga. Bar No. 674911 |
| 310 Richard Arrington Jr. Blvd. North | 600 Peachtree Street, N.E., Suite 4100 |
| Suite 500 | Atlanta, GA 30308 |
| Birmingham, AL 35203 | (404) 888-4000 |
| (205) 328-5050 | Fax: (404) 888-4190 |
| Fax: (205) 320-1659 | lbracken@huntonak.com |
| gc@glendacochran.com | lwagner@huntonak.com |
| mm@glendacochran.com | |
| | Michael S. Levine (admitted *pro hac vice*) |
| *Attorneys for Defendants Hugh Gerald Delaughder, Jr. & Patsy Ann Whatley* | District of Columbia Bar No. 449272 |
| | 2200 Pennsylvania Avenue, NW |
| | Washington D.C. 20037 |
| | (202) 955-1500 |
| | Fax: (202) 788-2201 |
| | mlevine@huntonak.com |
| | |
| | *Attorneys for Defendant Colonial Pipeline Company* |
| **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.** | **STEWART & STEWART, P.C.** |
| | /s/Edward McF. Johnson (via email authority Jan. 21, 2020) |
| /s/D. Michael Andrews (via email authority Jan. 21, 2020) | Edward McF. Johnson |
| D. Michael Andrews | (ASB-5848-O59E) |
| (ASB-9591-V85-A) | 1021 Noble Street, Suite 110 |
| P.O. Box 4160 | Anniston, Alabama 36201 |
| Montgomery, AL 36103 | (256) 237-9311 |
| (334) 269-2343 | wts70@stewartandstewart.net |
| Fax: (334) 945-7555 | ejohnson@stewartandstewart.net |
| mike.andrews@beasleyallen.com | |
| | *Attorneys for Cherry Gentry, Kay White, Brent Carter and Brooke Carter* |

| *Attorney for Defendant Beverly Kay Willingham* | |
|---|---|

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 11th day of March, 2020, a true and correct copy of the foregoing document has been served upon all counsel of record via CM/ECF.

/s/Michelle L. Crunk
*Counsel for Plaintiffs Ohio Security Insurance Company and The Ohio Casualty Insurance Company*