# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,** | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) **CIVIL ACTION NO.** |
| | ) **2:19-CV-1656-MHH** |
| v. | )<br>) |
| **SUPERIOR LAND DESIGNS, LLC, et al.** | )<br>)<br>) |
| Defendants. | ) |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE

Plaintiffs Ohio Security Insurance Company ("Ohio Security") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, the "Insurers") submit this reply in support of their Motion to Strike[1] incorporated into their Reply in Support of Motion for Summary Judgment. (Doc. 76).

Insurers maintain that their motion for summary judgment may be decided based upon comparing the Underlying Lawsuits with the terms and conditions of the

---

[1] Although Colonial challenges Insurers' filing of a motion to strike, as this Court has held, objections to summary judgment evidence filed by the non-moving party should be addressed in the reply brief. *See Engineered Arresting Sys. Corp. v. Atech, Inc.*, 356 F. Supp. 3d 1323, 1327 (N.D. Ala. 2018). Accordingly, regardless of whether the Court treats Insurers' objections as a Motion to Strike or converts them to objections to evidence under Federal Rule of Civil Procedure 56, they serve the same purpose, namely objecting to Colonial and Superior's Affidavits.

Policies. The Insurers submitted evidence in support of its Motion to Strike to show Superior's and Colonial's prior admissions which are inconsistent with the testimony in the Affidavits.[2] Further, the obligation to seek discovery on "true facts" to establish the duty to defend fell upon Superior (and any other defendant), not Insurers. Superior and Colonial failed to seek discovery to support any "true facts" and instead filed the Affidavits. Accordingly, the Court should grant Insurers' Motion to Strike and decline to consider the Affidavits.

## I.     Insurers Submitted Additional Evidence to Address the Factual Inconsistencies in the Affidavits.

Colonial's statement that Insurers "have abandoned any pretense of adhering to the 'four corners' rule'" is incorrect. The additional evidence submitted by Insurers was offered in support of the Motion to Strike, not the Motion for Summary Judgment. Colonial and Superior filed the Affidavits, which directly contradict prior admissions by both Superior and Colonial, to create a question of fact where none existed. This is improper on a motion for summary judgment. *See Faulk v. Volunteers of Am.*, 444 F. App'x 316, 318 (11th Cir. 2011)[3] ("When a party has given clear answers to unambiguous questions which negate the existence of any

---

[2] Colonial also states that the facts in the affidavits are "entirely consistent with the evidence on the record," which if true, begs the question why Superior and Colonial believed it necessary to file affidavits about information already in the record.

[3] Although this case specifically references deposition testimony, the rationale is the same. Parties cannot use affidavits to contradict prior admissions to create a factual dispute.

genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.") Insurers submitted the additional evidence to show these factual inconsistencies.

Colonial's claim that the statement in its Affidavit that Superior's work on October 31, 2016 "did not involve any activities to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants or any form of environmental contamination" is a "true fact" is conclusory and ignores Colonial's prior admissions.[4] The Colonial Affidavit directly contradicts admissions made by Colonial in its lawsuit against AIG, its pollution insurance carrier. Colonial's attempt to reconcile its prior admissions with its current

---

[4] Colonial's argument that Insurers "knew" about this statement because it was included in Superior's and Colonial's Answers and the Report of Parties Planning Meeting is incorrect. In the documents cited, Superior and Colonial merely disagree with Insurers' position without providing facts in support of their disagreement. Superior and Colonial's disagreement with Insurers' coverage position regarding the pollution exclusion or legal interpretation of this exclusion are not factual contentions that Insurers must consider. *See JLM Enterprises, Inc. v. Houston Gen. Ins. Co.*, 196 F. Supp. 2d 1299, 1313 (S.D. Ga. 2002) (granting summary judgment on the duty to defend in favor of the insurer and finding that "plaintiffs presented no alternative factual scenario giving rise to a duty to investigate. Rather, plaintiffs presented an alternative legal interpretation of the CGL provisions based on the relevant facts already available to Houston."); *State Farm Fire & Cas. Co. v. Brewer*, No. CIVA 106CV-2296-RWS, 2008 WL 450817, at *3 (N.D. Ga. Feb. 15, 2008) ("Merely denying the allegations in the underlying action does not entitle the insured to coverage; rather the insured must present affirmative evidence in the declaratory action that the 'true facts show coverage.'").

3

position is unavailing.[5] Regardless of Colonial's argument, the fact remains that in its Affidavit, Colonial states that Superior's work on October 31, 2016 did not involve "any activities to … in any way respond to, or assess the effects of pollutants or any form of environmental contamination." (Doc. 69, ¶ 5). And in Colonial's lawsuit against its pollution carrier, Colonial stated that L.E. Bell's and Superior's work on October 31, 2016 was "part of the efforts to respond to" the September 2016 Leak. (Doc. 75-3, ¶¶ 24-34). Colonial's argument that these statements were "taken out of context" is nonsensical, because Insurers quoted multiple paragraphs, in full, from Colonial's complaint against its pollution insurer. (Doc. 76, pp. 10-11).

Accordingly, either Colonial's Affidavit, or its factual allegations in a federal lawsuit seeking millions in insurance benefits from its pollution liability insurer, are untrue. Nevertheless, regardless of which Colonial position is untrue, the Underlying Lawsuits all allege that Superior's work on October 31, 2016 was in response to the September 2016 Leak. (Doc. 1-3, p. 5, ¶¶ 14-15, p. 8, ¶ 21; Doc. 1-4, p. 5, ¶ 20, p. 6, ¶ 21, p. 7, ¶ 25; Doc. 1-6, p. 5, ¶¶ 13-14, p. 6, ¶ 19; Doc. 1-5, p. 4, ¶ 17, p. 5, ¶ 19; Doc. 1-7, p. 4, ¶ 20; Doc. 1 p. 7, ¶ 30, Doc. 33, p. 7, ¶ 30; Doc. 1 p. 7, ¶ 31, Doc. 33, p. 7, ¶ 31). The only exception is the Wright Lawsuit, which does not comment on

---

[5] Whether or not the "allegations in a separate lawsuit" can be imputed to Juan Cazares is immaterial, as Mr. Cazares, as a representative of Colonial, made a statement that directly contradicts admissions previously made by Colonial.

this issue.[6] Accordingly, the allegations of the Underlying Lawsuits (except Wright) and Colonial's admissions in its lawsuit against AIG are consistent – Colonial's and Superior's work on October 31, 2016, at the time of the Release, was part of the effort to respond to the September 2016 Leak, where gasoline, a pollutant, was released and contaminated the surrounding environment.

Insurers also submitted evidence to address the glaring contradiction made by Superior in the "Amended Affidavit of Patrick Dover" (Doc. 73-1) about Covey's work on October 31, 2016. Dover testified that Covey was engaged "to supervise the excavation work" and that Covey "directed the excavation activities of L.E. Bell" (Doc. 67-1, ¶¶ 3, 5). This comports with Superior and Colonial's multiple prior admissions (and the allegations in the Underlying Lawsuits) that Superior was hired by Colonial as a third-party inspector and hired Covey to complete that inspection

---

[6] The only reason Insurers included the NTSB report in their Motion for Summary Judgment is because the Wright Lawsuit does not mention the September 2016 Leak and does not explicitly make the connection between the September 2016 Leak and Superior's work on October 31, 2016. The NTSB report makes this connection. The Court need not consider the NTSB report to evaluate the Insurers' Motion for Summary Judgment with respect to the other Underlying Lawsuits because all of them (except Wright) allege that Superior's work on October 31, 2016, at the time of the Release, was in response to the September 2016 Leak. Thus, unlike the Affidavits, the NTSB Report is in addition to, not contradictory to, the allegations in the Underlying Lawsuits.

Additionally, "extrinsic evidence" that can be judicially noticed may be considered by this Court and is different than the Affidavits, which included new and inconsistent allegations. Insurers also note that should the Court rule to exclude coverage for Superior under the Policies' professional services exclusions, Colonial's Affidavit and the NTSB Report, both of which relate solely to the Policies' pollution exclusions, will be moot.

work on October 31, 2016. (*See* Doc. 30, ¶ 32; Doc. 75-2, ¶ 19; Doc. 75-3, ¶ 30; Doc. 75-1, ¶ 5; Doc. 75-4, ¶ 5; Doc. 75-5, ¶ 22; Doc. 75-7, ¶ 20; Doc. 75-6, ¶ 26; Doc. 75-8, ¶¶ 19, 20; Doc. 75-9, ¶ 20). Neither Superior nor Colonial had ever claimed differently until Dover submitted his Amended Affidavit, testifying that Covey was engaged merely "to observe the excavation work" and that Covey "observed the excavation activities of L.E. Bell so that he could report back to Colonial regarding those observations." (Doc. 73-1, ¶¶ 4, 6).

In its response, Colonial acknowledges that the fact Superior was hired as a third-party inspector, to provide inspection services, is not "in dispute," and that "the affidavits do not say otherwise." Thus, the "true facts" undisputed by Colonial, and previously admitted by Superior, are that Colonial retained Superior as an inspector, Superior tasked Covey with those duties, and Superior, through Covey, was performing inspection services at the time of the Release on October 31, 2016. Superior's attempt to re-characterize Covey's services as "observation" in Dover's Amended Affidavit (Doc. 73-1, ¶¶ 4, 6) should not be taken into consideration by this Court, as it simply contradicts prior admissions. Although Colonial states that whether Covey and Superior provided "inspection services" does not matter, the Policies' plain language excludes coverage for supervisory and inspection services, the very services that Colonial and Superior admit Superior was performing at the time of the Release.

6

Accordingly, Insurers filed the additional evidence to combat the inconsistent and contradictory statements made by Superior and Colonial in the Affidavits and to show that these statements are not "true facts" and should not be considered by this Court in deciding the duty to defend.[7]

## II. Colonial Misses the Point About Discovery in this Matter.

In its Order, this Court stated it believed that the duty to defend could initially be examined without discovery. (Doc. 56, p. 2). Insurers agree with this statement and thus did not request to take discovery. Nevertheless, Colonial's reference to Insurers' "decision" not to take discovery is immaterial here, as the Court's order on discovery was directed to defendants, including Colonial. In its Order, this Court provided, "If any party believes that the duty to defend cannot be *established* without

---

[7] The other "true facts" Colonial alleges were known to Insurers are irrelevant and immaterial to Insurers' Motion for Summary Judgment. Insurers do not dispute that Superior and Colonial have previously alleged that Covey was an independent contractor. However, consideration of this allegation shows that it is at odds with the contract between Colonial and Superior and at odds with Insurers' understanding that Covey received worker's compensation coverage from Superior. Moreover, Dover's Affidavit does not address the right to control work test to determine whether one is an employee or an independent contractor. *See, e.g., Wilson v. Guy*, No. A20A0969, 2020 WL 5201003, at *3 (Ga. Ct. App. Sept. 1, 2020), and *Donaldson v. Country Mut. Ins. Co.*, 291 So. 3d 1172, 1175-76 (Ala. 2019). Thus, this is not a "true fact." Additionally, as discussed in Insurers' Reply, whether or not Covey was an independent contractor is immaterial to the duty to defend. (Doc. 76, pp. 17-18).

Insurers also do not dispute that Superior and Colonial have previously alleged that Covey was not an engineer, architect or surveyor. However, this fact is also irrelevant and immaterial because, as discussed in Insurers' Reply, the Professional Liability Exclusions are not limited to engineers, architects, and surveyors. *See Hermitage Ins. Co. v. Brewer*, 57 F. App'x 210 (5th Cir. 2002); *Navigators Specialty Ins. Co. v. Beltman*, No. 11-CV-00715-RPM, 2012 WL 5378750, at *11 (D. Colo. Nov. 1, 2012).

7

'true facts' that the party must explore through discovery, then that party may file an appropriate request for discovery pursuant to Rule 56(d)." (Doc. 56, p. 2) (emphasis added). Insurers have alleged there is no duty to defend under the Policies; therefore, if any party was going to "establish" the duty to defend, that would have been Superior or one of the defendants, not the Insurers. Additionally, Rule 56(d) states: "If a *nonmovant* shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition…" (emphasis added). Colonial, Superior, and the other defendants are the "nonmovants" here, and thus had the obligation to request discovery on "true facts" if they believed they were necessary to decide the duty to defend.

Notwithstanding Superior and Colonial's obligation to take discovery, if Superior or Colonial believed "true facts" outside the Underlying Lawsuits should be considered, particularly the statements in the Affidavits regarding Covey "observing" and Superior's work being unrelated to the September 2016 Leak, it was their duty to notify Insurers of such facts, through discovery or otherwise, not by filing inconsistent Affidavits in response to summary judgment. *See JLM Enterprises*, 196 F. Supp. 2d at 1311 (holding that when a "complaint on its face shows no coverage, but *the insured notifies the insurer of factual contentions* that would place the claim within the policy coverage ...the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on

"true facts") (emphasis added). The Affidavits do not "notify" Insurers about these alleged "true facts" because they simply set forth inconsistent and contradictory statements. Thus, discovery would have been the appropriate route for Superior and Colonial to notify Insurers about these allegations. Since Superior and Colonial decided not take discovery on, or otherwise notify Insurers about, their alleged "true facts"[8] they should not now be permitted to attempt to introduce them through the Affidavits.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an Order striking the Affidavits or decline to consider them in determining the duty to defend.

This 16th day of October, 2020.

        **ZELLE LLP**

        */s/ James V. Chin*
        James V. Chin (*admitted pro hac vice*)
        Ga. Bar No. 124827 (jchin@zelle.com)
        Seth V. Jackson (*admitted pro hac vice*)
        BBO #658669 (sjackson@zelle.com)
        1201 W. Peachtree Street NW, Suite 610
        Atlanta, GA 30309
        (470) 867-3040
        (612) 336-9100 Fax

---

[8] Although Colonial alleges it did not take discovery because it "already had sufficient 'true facts' to rebut the Insurers' arguments," this is missing the point. As discussed above, these "true facts" were not consistent with Colonial's prior admissions.

>  */s/ John W. Dodson*
> **DODSON GREGORY, LLP**
> John W. Dodson (jwd@dodsongregory.com)
> (ASB-9724-D65J)
> Michelle L. Crunk (mlc@dodsongregory.com)
> (ASB-2967-I71C)
> PO Box 530725
> Birmingham, AL 35253
> (205) 834-9171
> (205) 278-8718 Fax
>
> *Attorneys for OHIO SECURITY INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of October, 2020, a true and correct copy of the foregoing document has been served upon all counsel of record via CM/ECF.

> */s/ John W. Dodson*
> OF COUNSEL