FILED
2021 Oct-15  PM 02:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **OHIO SECURITY INSURANCE CO. et al,** } | |
| } | |
| **Plaintiff,** } | |
| } | **Case No.: 2:19-cv-01656-MHH** |
| **v.** } | |
| } | |
| **SUPERIOR LAND DESIGNS, LLC et al,** } | |
| } | |
| **Defendant.** | |

## MEMORANDUM OPINION

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, plaintiffs Ohio Security Insurance Company and The Ohio Casualty Insurance Company have asked the Court to determine what duties they owe to defendant Superior Land Designs, LLC under two insurance policies. Superior has been sued in several state court actions relating to a gas explosion, and the company has sought coverage from the insurers for the state court actions. In their pending motion for summary judgment, the insurers urge the Court to find as a matter of law that they have no obligation to defend Superior because two exclusions in Superior's policies eliminate Superior's coverage for

those lawsuits.  This opinion resolves the insurers' motion for summary judgment and a related motion to strike.

The opinion begins with a discussion of the standard that a district court uses to evaluate motions for summary judgment.  Then, the Court identifies the relevant provisions in Superior's policies and the relevant factual allegations in the underlying state court complaints.  Next, the Court briefly recounts the relevant procedural history of this case.  Finally, the Court evaluates the insurers' motions, applying Georgia law and discussing the impact of affidavits that Superior and Colonial have offered to supplement the factual allegations in the state court complaints.[1]

I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

---

[1] All parties agree that Georgia law applies under Alabama choice of law rules because the insurance contracts were formed in Georgia.

interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Accordingly, the Court views the evidence and the allegations in the underlying state court complaints in the light most favorable to Superior Land Designs and draws all reasonable inferences from the evidence in Superior's favor.

## II.

Colonial Pipeline Company owns and operates a refined petroleum pipeline system that runs from Houston, Texas to Linden, New Jersey. (Doc. 1-3, p. 3, ¶ 6). According to the state court plaintiffs, in September of 2016, Colonial discovered a leak from one of its pipelines in Shelby County, Alabama. (Doc. 1-3, p. 4, ¶ 10). More than 300,000 gallons of gasoline spilled from the leak. (Doc. 1-3, p. 4, ¶ 10). The state court plaintiffs allege that, "to remediate the leak," Colonial had to excavate and access sections of its pipeline that were some distance from the site of the leak. (Doc. 1-3, p. 5, ¶ 14). Colonial contracted with L.E. Bell Construction to

"perform excavation and repairs." (Doc. 1-3, p. 6, ¶ 15). The state court plaintiffs assert that Colonial contracted with Superior Land Designs "as an additional, third-party inspector to observe, direct, and/or supervise the excavation and repair work" being performed by L.E. Bell. (Doc. 1-3, p. 8, ¶ 21). The plaintiffs state that "Superior and Colonial assigned their agent/servant/employee, Chris Covey, to inspect at the site of the L.E. Bell Crew's excavations, and he was responsible for directing excavation activities and ensuring they were performed in a safe manner." (Doc. 1-3, pp. 9-10, ¶ 26).

On October 31, 2016, an L.E. Bell work crew attempted to excavate a portion of the pipeline to access TOR fittings. (Doc. 1-3, pp. 10-13, ¶¶ 29-36). Chris Covey was at the work site. (Doc. 1-3, pp. 11-12, ¶ 32). The state court plaintiffs contend that he was serving as "Superior's inspector." (Doc. 1-3, pp. 11-12, ¶ 32). While attempting the excavation, the track-hoe operator ruptured the pipeline. (Doc. 1-3, p. 14, ¶ 41). Gasoline escaped and ignited, causing injuries for which the state court plaintiffs seek relief in their complaints. (Doc. 1-3, p. 14, ¶¶ 42-43).

Five lawsuits were filed against Colonial and Superior. (Doc. 1-3; Doc. 1-4; Doc. 1-5; Doc. 1-6; Doc. 1-7). Superior asked its insurers, Ohio Security and Ohio Casualty, to defend it in the state court actions. (Doc. 1, p. 11, ¶ 46; Doc. 33, p. 10, ¶ 46). The insurers have provided a defense subject to a reservation of rights. (Doc. 1, p. 11, ¶ 47; Doc. 33, p. 10, ¶ 47). Two insurance policies are at the heart of this

coverage dispute:  an Ohio Security commercial general liability insurance policy, (Doc. 1-9), and an Ohio Casualty commercial umbrella insurance policy, (Doc. 1-10).

The commercial general liability insurance policy contains two exclusions relevant to Superior's request for coverage.   The first exclusion is titled "EXCLUSION   –   ENGINEERS,   ARCHITECTS   OR   SURVEYORS PROFESSIONAL LIABILITY."  (Doc. 1-9, p. 82).   This exclusion states, in pertinent part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2.  Supervisory, inspection, architectural or engineering activities.

(Doc. 1-9, p. 82).[2]  The second exclusion is titled "Pollution."  (Doc. 1-9, p. 63).  As relevant here, this exclusion states that Superior's policy does not cover:

---

[2] The "professional services" exclusion in the commercial umbrella insurance policy is nearly identical.  (Doc. 1-10, p. 53).

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

. . .

(e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(Doc. 1-9, pp. 63-64).[3]  The policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  (Doc. 1-9, p. 76).[4]

III.

Following the parties' Rule 26(f) planning meeting, the Court issued the following order:

This language [referring to the United States District Court for the North District of Georgia's opinion in *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329 (N.D. Ga. 2018)] leads the Court to believe that the duty to defend initially may be examined without discovery.  If a comparison of the allegations in the underlying complaints with the provisions of the policy at issue reveals that even one claim in each underlying action gives rise to a duty to defend, then

---

[3] The "pollution" exclusion in the commercial umbrella insurance policy, while structured differently, is substantively similar.  (Doc. 1-10, pp. 70-71).

[4] The definition of "pollutants" in the commercial umbrella insurance policy is nearly identical. (Doc. 1-10, p. 71).

> under Georgia law, the duty extends to all claims in the underlying action.
>
> The Court proposes setting a briefing schedule on the issue of the duty to defend.  If any party believes that the duty to defend cannot be established without "true facts" that the party must explore through discovery, then that party may file an appropriate request for discovery pursuant to Rule 56(d).  On or before April 24, 2020, any party who disagrees with the Court's proposal shall file a written objection.
>
> The Court shall examine the duty to indemnify after the Court resolves the duty to defend.

(Doc. 56, p. 2).  None of the parties objected to the Court's proposal or filed a request for discovery.  Instead, on September 11, 2020, the insurers filed a motion for summary judgment, arguing that they do not have a duty to defend Superior in the state court actions.  (Doc. 66).

Superior and Colonial responded to the motion for summary judgment.  (Doc. 68; Doc. 70; Doc 74).[5]  With their responses, Superior and Colonial filed affidavits. (Doc. 67; Doc. 69; Doc. 73).[6]  Superior filed the affidavit (and, later, the amended affidavit) of Patrick Dover, the company's owner.  (Doc. 67; Doc. 73-1).  In his amended affidavit, Mr. Dover states, among other things, that Chris Covey was an independent contractor, not a Superior employee, (Doc. 73-1, pp. 2-3, ¶ 4); that Mr. Covey was tasked only with observing the excavation site work and reporting back

---

[5] The third document, Doc. 74, is Superior's amended response brief, filed with Superior's amended affidavit.

[6] The third document, Doc. 73, is a notice of filing of Doc 73-1, Superior's amended affidavit.

to Colonial, (Doc. 73-1, pp. 2-3, ¶¶ 4, 6); and that Mr. Covey is not an engineer, architect, or surveyor, (Doc. 73-1, p. 3, ¶ 5). Colonial filed the affidavit of Juan Cazares. (Doc. 69). At the time of the accident giving rise to the state court litigation, Mr. Cazares was Colonial's Manager, District Projects, for the Southern District. (Doc. 69, pp. 2-3, ¶ 2). In his affidavit, Mr. Cazares states, among other things, that Superior's work was not a response to the effects of pollutants or environmental contamination. (Doc. 69, pp. 2-3, ¶ 5). Mr. Cazares also states that Superior was "the contractor responsible for providing inspection services for the TOR work being performed by L.E. Bell on October 31, 2016." (Doc. 69, p. 2, ¶ 5).

The insurers have asked the Court to strike the affidavits. The insurers argue that the Court should decide their motion for summary judgment based on only the insurance policies and the state court complaints. (Doc. 76). Alternatively, the insurers request an opportunity to conduct discovery to explore the factual assertions in the affidavits. (Doc. 76, p. 11).

IV.

Georgia law sets the parameters for the types of information that a district court may consider when evaluating the scope of an insurer's duty to defend an insured. Those parameters rest on general principles governing the interpretation of insurance contracts. Under Georgia law, "'an insurer's duty to defend is broader than its duty to indemnify.'" *Travelers Property Cas. Co. of Am. v. Kansas City*

*Landsmen, L.L.C.*, 592 Fed. Appx. 876, 881 (11th Cir. 2015) (quoting *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007)). "[A]n insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *Travelers Property*, 592 Fed. Appx. at 882 (quoting *Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998)). "[E]xceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage." *Wilkinson v. Georgia Farm Bureau Mut. Ins. Co.*, 833 S.E.2d 579, 582 (Ga. Ct. App. 2019) (quoting *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015)). "Any doubt as to the insurer's duty to defend [] should be resolved in favor of the insured." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (applying Georgia law). "[W]here an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted." *Morrison Homes, Inc.*, 701 F.3d at 666.

To determine whether a claim against an insured triggers an insurer's duty to defend, a district court "must compare the allegations of the underlying complaint against the provisions of the [insurance] policy." *Travelers Property*, 592 Fed. Appx. at 882. Additionally, a district court may consider "true facts." *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 &*

*TO31504671*, 491 S.E.2d 337, 338-39 (Ga. 1997); *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329, 1334 (N.D. Ga. 2018). "True facts" are not facts alleged by the plaintiff in an underlying complaint but instead are facts which an insured identifies as relevant to coverage or which are otherwise known by the insurer. *Underwriters Subscribing*, 491 S.E.2d at 338; *PTAV*, 331 F. Supp. 3d at 1334; *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) ("If the true facts are known or ascertainable to the insurer at the outset, then the insurer is obligated to defend the suit . . ."). When an insured identifies relevant facts that differ from the factual allegations in an underlying complaint, the insurer must "conduct a reasonable investigation into its insured's contentions. To relieve an insurer of any duty to investigate its insured's contentions would allow the allegations of a third-party to determine the insured's rights under its contract." *Underwriters Subscribing*, 491 S.E.2d at 339 (internal citations omitted).

In their affidavits, Superior and Colonial have identified facts that differ from the factual allegations in the underlying state court complaints. For example, as it relates to the professional services exclusion, a plaintiff in one of the underlying complaints alleges that Mr. Covey was an "agent/servant/employee/representative" of Superior and was "acting on [Superior's] behalf" as an "inspector." (Doc. 1-3, p. 10, ¶ 27). If the state court plaintiff correctly alleged that Mr. Covey was an

employee of Superior and that he was acting as an inspector, then the professional services exclusion may be triggered.  In his affidavit, Mr. Dover states that Mr. Covey was an independent contractor, not an employee of Superior.  (Doc. 73-1, pp. 2-3, ¶ 4).  If that is so, then the professional services exclusion, read narrowly and in favor of Superior, likely does not exclude coverage for the underlying state court action.

As it relates to the pollution exclusion, the plaintiff in the same underlying complaint alleges that Colonial experienced a leak of over 300,000 gallons of gasoline in September 2016, (Doc. 1-3, p. 4, ¶ 10); Colonial contracted with L.E. Bell to "remediate the September leak," (Doc. 1-3, p. 6, ¶ 15); and, as part of this remediation work, on October 31, 2016, the L.E. Bell workers, under the supervision of Superior's inspector, ruptured a pipeline, causing an explosion, (Doc. 1-3, pp. 13-14, ¶¶ 37-43).  If those allegations correctly capture the reason for the October 2016 excavation work, then the pollution exclusions in Superior's policies may eliminate Superior's coverage for the underlying actions because the policies expressly exclude claims for bodily injury or property damage that results from the escape of pollutants if the operations that caused the injury were in response to a leak of pollutants.  (Doc. 1-9, pp. 63-64; Doc. 1-10, pp. 70-71).  In his affidavit, Mr. Cazares states that the excavation work on October 31, 2016 was not part of Colonial's response to the September 2016 gasoline spill in Shelby County.  (Doc. 69, pp. 2-3,

¶ 5).  If that is so, then the pollution exclusion, read narrowly and in favor of Superior, does not eliminate Superior's coverage for the state court action.[7]

Colonial argues that facts in the Dover and Cazares affidavits which contradict the factual allegations in the underlying state court complaints are the "true facts" that the Court should consider in ruling on the insurers' motion for summary judgment.[8]  Superior argues that, even without the affidavits, the insurers know true

---

[7] The insurers argue that, under Georgia law, courts must broadly interpret pollution exclusions. (Doc. 76, pp. 19-22).  That is true in the sense that Georgia has applied broadly-worded pollution exclusions to situations beyond traditional environmental tort scenarios such as chemical spills in waterways.  *See Georgia Farm Bureau Mut. Ins. v. Smith*, 784 S.E.2d 422 (Ga. 2016) (finding that CGL policy exclusion that defined "pollutant" broadly eliminated coverage for lessor of rental house that contained lead-based paint for lawsuit relating to lessee's child's ingestion of the paint). The pollution exclusion in the *Smith* case applied because the circumstances that gave rise to the underlying lawsuit were circumstances contemplated by the exclusion.  *Smith*, 784 S.E.2d at 423 (stating that pollution exclusion applied to "(1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants': (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.").  Per the express language of the pollution exclusion, the locus of the pollutant and the circumstances surrounding its release limited the scope of the exclusion in *Smith*.  The same is true here.  Under the express language of the pollution exclusions in Superior's policies, the pollution exclusions apply only if the bodily injury at issue occurred in relation to Superior's response to the effects of a pollutant.  (Doc. 1-9, pp. 63-64; Doc. 1-10, pp. 70-71).  Under Georgia law, the Court must interpret this limiting language narrowly in favor of Superior.

[8] Colonial argues, and the insurers acknowledge, that Colonial and Superior previously asserted in answers to the underlying state court complaints that Mr. Covey was an independent contractor. (Doc. 77, p. 8; Doc. 78, p. 7 n.7).  Moreover, in their position statements in the parties' report of their planning meeting, Superior and Colonial asserted that Mr. Covey was an independent contractor and that the work performed at the excavation site was not work that would trigger the pollution exclusion in Superior's policies.  (Doc. 42, pp. 5-6, 9-10).

facts that trigger coverage because those facts are contained in the NTSB report that the insurers attached to their summary judgment motion.  (Doc. 74, p. 21, n. 5).[9]

The insurers argue that the facts in the Dover and Cazares affidavits are not "true facts" because, for example, the professional services exclusion applies to Superior employees, (Doc. 76, pp. 12-15); "it is the Insurers' understanding that Covey received workers' compensation coverage for his injuries from Superior's worker's compensation insurer," (Doc. 76, p. 6), and "[t]ypically, only employees are eligible for workers' compensation coverage," (Doc. 76, p. 6).  Likewise, the insurers argue that the Dover affidavit does not speak to the level of control that

---

[9] For its argument that the NTSB report shows that the work performed on October 31, 2016 "apparently had nothing whatsoever to do with the September 2016 Leak," (Doc. 74, p. 21), Superior seems to rely on the following passage in the NTSB report, titled "Purpose of Excavation":

> At the time of the accident, the excavation being performed was to expose a series of TOR fittings on Line 1 in preparation for the upcoming maintenance work to inject nitrogen into Line 1 during the removal of a temporary bypass pipe used to repair a previous leak.  The Colonial project manager indicated that, by Colonial pipeline documentation alone, they were unable to confirm the number of TORs on that segment of Line 1 (at the accident location) and that the number of TORs could only be verified by excavating the pipe.  The excavation would also permit the installation of additional TORs for nitrogen injection if they were deemed necessary.

(Doc. 65, p. 6) (internal references omitted).  A footnote at the end of the first sentence of the above passage states:  "The previous leak on Line 1 occurred September 9, 2016, at a location about 5.5 miles downstream (northeast) of the accident site."  (Doc. 65, p. 6 n.7).  Viewed in the light most favorable to Superior, the NTSB report indicates that the September 2016 leak was resolved by October 31, and the work that took place on October 31 was in anticipation of maintenance work to Colonial's pipeline for the removal of a temporary bypass pipe that Colonial no longer needed because the repair of the September 2016 gasoline leak was complete.

Superior exercised over Mr. Covey's work, and, under Georgia and Alabama law, control is determinative of employment status.  (Doc. 76, p. 5).[10]  The insurers assert, without citation to evidence, that "Superior has professional liability insurance and Superior's professional liability insurer is defending Superior in the Underlying Lawsuits."  (Doc. 76, p. 16).[11]

With respect to the pollution exclusion, the insurers argue that Colonial alleged in a complaint against one of its insurers that the October 31, 2016 work was part of the response to the September 9, 2016 gasoline leak.  (Doc. 76, pp. 10, 11, 22) (citing Doc. 75-3, pp. 10-11, ¶¶ 24-34).  Perhaps Colonial's factual allegation in a lawsuit that it filed can be used against Colonial, but Superior is the insured in this action, and as it relates to Superior, Colonial's factual allegations in another lawsuit are like the factual allegations in the underlying state court complaints:  "the allegations of a third-party" cannot "determine the insured's rights under its contract."  *Underwriters Subscribing*, 491 S.E.2d at 339.[12]  If the true facts show

---

[10] *Wilson v. Guy*, 848 S.E.2d 138 (Ga. Ct. App. 2020); *see also Donaldson v. Country Mutual Ins. Co.*, 391 So. 3d 1172, 1175-76 (Ala. 2019).

[11] The Court assumes that the insurers did not present evidence in support of their motion for summary judgment because doing so would contradict their assertion that the Court should resolve their summary judgment motion based solely on the language of their policy exclusions and the factual assertions in the underlying state court complaints.

[12] Colonial stated in one of its briefs that it is an additional insured under Superior's policies.  (Doc. 70, p. 1 n.1).  The Court has found no language in the policies in the record to substantiate that assertion.  Moreover, the Court has not located case law that suggests that prior factual allegations by an "additional insured" should be treated differently from the factual allegations of the state

that the October 31, 2016 work was not related to Colonial's response to the September 2016 gasoline spill, then the pollution exclusions in Superior's policies likely will not preclude coverage. The Cazares affidavit creates a disputed fact in this regard.[13]

The insurers argue that, by submitting the Dover and Cazares affidavits, Superior and Colonial violated the order in which the Court directed any party that believed that the duty to defend could not be established without "'true facts' that the party must explore through discovery" to request discovery pursuant to Rule 56(d). (Doc. 56, p. 2; Doc. 76, pp. 3-4). By filing the Dover and Cazares affidavits, Superior and Colonial indicated that they believe the facts contained in those affidavits are sufficient to create questions of fact regarding the professional services and pollution exclusions on which the insurers rely, so as to defeat the insurers' summary judgment motion. The Court's order only confirmed the opportunity that Rule 56(d) provided to Superior and Colonial (and every other party) -- the right to request discovery if they did not believe they had sufficient information to oppose the pending summary judgment motion. Neither Superior nor Colonial had to

---

court plaintiffs or any other third party. If they wish, the parties may address this point later in this action.

[13] The October 31, 2016 gas leak, on its own, cannot trigger the pollution exclusions in Superior's policies. Under the express language of the policies, the exclusions do not apply unless the bodily injury described in an underlying action is causally tied to the insured's response to the effects of a pollutant. (Doc. 1-9, p. 64; Doc. 1-10, p. 71).

request discovery as a prerequisite for submitting evidence in opposition to the insurers' summary judgment motion.

## CONCLUSION

Because the insurers have not yet investigated the "true facts" that Superior and Colonial have introduced in opposition to the insurers' motion for summary judgment, the Court grants the insurers' request for discovery. The Court denies without prejudice the insurers' motion for summary judgment. (Doc. 66).[14] The parties shall have three months to explore the factual assertions in the Dover and Cazares affidavits and the NTSB report. At the conclusion of that period of discovery, any party may file a summary judgment motion concerning the application of the professional services and pollution exclusion provisions in Superior's policies.[15]

**DONE** and **ORDERED** this October 15, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[14] The Court also denies the insurers' motion to strike.

[15] With respect to the professional services exclusion, any party that moves for summary judgment should consider the decisions in *Cowell v. Gaston County*, 660 S.E.2d 915 (N.C. App. 2008), and *Navigators Specialty Ins. Co. v. Beltman*, 2012 WL 5378750 (D. Colo. Nov. 1, 2012).